**Diane McCASKEY, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–75–69.**

Court of Criminal Appeals of Oklahoma.

April 24, 1975.

Williams, Fransein & Savage, by James W. Fransein, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., David O'Brien, Legal Intern, for appellee.

OPINION

PER CURIAM:

Diane McCaskey, hereinafter referred to as defendant, was jointly charged, tried and convicted, with Ricky McCaskey, in the District Court, Rogers County, Oklahoma, after a waiver of her right to a jury trial, for the offense of Possession of Marijuana with Intent to Distribute, in violation of 63 O.S.1971, § 2–401(B)(2), Case No. CRF–73–173. Her punishment was set at two (2) years imprisonment and from said judgment and sentence a timely appeal has been perfected to this Court.

The defendant asserts that the Affidavit for the search warrant and the subsequent search conducted under the authority of the search warrant based upon such Affidavit, was an unlawful search and seizure in violation of the Fourth Amendment of the Constitution of the United States. The Affidavit upon which the search warrant was issued appears in the record as follows:

"AFFIDAVIT FOR SEARCH WARRANT

"The undersigned, being first duly sworn, deposes and says:

I

"He is a duly qualified and acting deputy sheriff on the County of Rogers,

State of Oklahoma and as such is authorized to make searches and seizures.

## II

"He has reason to believe that on the premises known as:

The residence of Mr. & Mrs. Harold McCaskey, in Foyil, Oklahoma, at a point where old 66 Highway intersects with the south edge of the city limits of Foyil, Oklahoma, proceed north to the third house on the right side (east side) of old 66 Highway. Said house being a white, frame, one-story, box-type house with composition shingles.

located in the City of Foyil, County of Rogers, State of Oklahoma, there is now being concealed certain profperty [sic], namely marijuana. Said marijuana being classified as a controlled dangerous substance in Schedule I(C–10) of the Uniform Controlled Dangerous Substances Act of this state, the possession of which property is a felony. Said property is being used as the means of committing a felony and said property is possessed by HAROLD McCASKEY, RICKY McCASKEY and MRS. HAROLD McCASKEY, who intends to use it as a means of committing the crime of Illegal Possession of Marijuana with Intent to Distribute in violation of Title 63, Section 2–401 of Oklahoma Statutes.

## III

"The facts tending to establish grounds for issuance of a search warrant are as follows:

A confidential informant, who has proven very reliable in the past and is familiar with marijuana, says that he has personally observed on November 30, 1973 and December 4, 1973 that HAROLD McCASKEY, RICKY McCASKEY and MRS. HAROLD McCASKEY had in their possession a quantity of marijuana at the above described location; that he has personally observed HAROLD McCASKEY, RICKY McCASKEY and MRS.

HAROLD McCASKEY, selling marijuana at the above described location; that HAROLD McCASKEY, RICKY McCASKEY and MRS. HAROLD McCASKEY have in their possession at this time a quantity of marijuana at the above described location. The identity of the informant cannot be revealed because of fear for his personal safety.

## IV

"The confidential informant has proved reliable in the past in that:

The affiant placed the above described residence under surveillance on November 30, 1973 and December 4, 1973. During those days the affiant personally observed the informant entering and leaving the above described residence of said HAROLD McCASKEY. On those days, the affiant knew of his own personal knowledge that the informant had no marijuana on his person immediately prior to entering the above described residence. On those days, the affiant personally observed marijuana on the person of the informant immediately after the informant left the above described residence.

"WHEREFORE, the affiant asks that a search warrant be issued according to law, directed to any peace officer in Rogers County, Oklahoma, commanding him at any time of the day or night, to search the said premises and take possession of all the above described controlled dangerous substance (marijuana) and to arrest the person in whose possession the same may be found, to be delt [sic] with according to law and to make return of said search warrant within three days.

"Affiant /s/ Roy Carver

"Subscribed * * *"

We deem it unnecessary to rule on the sufficiency of the Affidavit, but assuming that it stated probable cause for the issuance of the search warrant, it is clear from the record at preliminary examination, set

forth below, that the statements contained in said Affidavit were false.

From the record, the following appears:

"JACK MAYBERRY: Q. What time of day?

ROY CARVER: A. About 2 o'clock in the afternoon. I didn't personally observe him that day. I wasn't there.

Q. The informant . . . oh, you weren't there that day?

A. No, sir." (P.E. 41)

\* \* \* \* \* \*

Q. Alright. And, you say he went there in a pickup?

A. Yes, sir.

Q. Did you search the pickup?

A. No, sir.

Q. Had he rode down there in the pickup?

A. Sir?

Q. He rode down there in the pickup?

A. Yes, sir.

Q. And, did he return in the pickup?

A. Yes, sir.

Q. You don't know what was in the pickup? Could there have been marijuana in the pickup?

A. Oh, I guess there could have been. I didn't see any." (P.E. 45)

\* \* \* \* \* \*

"JACK GRAVES: Q. Was anybody with you when you went down there?

SKIP JONES (17 year old Informant): No.

Q. Anybody with you just immediately prior to going down there?

A. No.

Q. Anybody search you before you went down there?

A. No.

Q. Anybody search your pickup before you went down there?

A. No." (P.E. 79)

\* \* \* \* \* \*

Q. Did you see anybody on the way down there?

A. No.

Q. Did anybody search you before you went down there?

A. No.

Q. Did anybody search you when you left there?

A. No.

Q. And, did, what did you do with these joints you say you brought?

A. Well, I ended up, me and some of my friends ended up smoking them.

Q. You smoked them. Did you sell them to these friends?

A. No.

Q. Just give them to them?

A. We shared them.

Q. Who's we?

A. Me and Vickie and Harvey Erwin, his big brother." (P.E. 87).

In Henderson v. State, Okl.Cr., 490 P.2d 786, this Court cited with approval United States v. Upshaw, 448 F.2d 1218 (5th Cir., 1971), which held:

" 'Once it came to the attention of the court, from the testimony at the motion to suppress hearing, that evidence had been seized on the basis of statements of facts erroneously made by the affiant which struck at the heart of the affidavit's showing of probable cause, the court was required to grant the motion.' "

Further, in Henderson v. State, supra, Judge Brett said:

"It is further contended that the affidavit contains false allegations and misrepresentations which renders it invalid. If indeed the affidavit contained substantial false allegations or deliberate misrepresentations, then certainly such improper matters cannot be permitted to form the probable cause necessary to issue a warrant. The courts in performing their duty of upholding the law cannot rely upon unlawfulness or be a party to deceit and perjury. . . ."

For the reasons set forth in Henderson v. State, supra, we are of the opinion that the search and seizure conducted under the

authority of a search warrant issued on an Affidavit which was established to be false by the testimony at the preliminary examination, constituted an unlawful search and seizure in violation of the defendant's right, guaranteed by the Fourth Amendment to the Constitution of the United States. This case is accordingly reversed and remanded with instructions to dismiss.