THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* WILLIE L. BRUMFIELD *et al.*, Defendants-Appellees.

First District (5th Division)    No. 80-70

Opinion filed September 11, 1981.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Joel A. Stein, and Deborah M. Dooling, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (Thomas W. Murphy, Assistant Public Defender, of counsel), for appellees.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Defendants, Willie L. Brumfield and Terry Gregory, were charged with one count of possession of cocaine and one count of possession of heroin. (Ill. Rev. Stat. 1977, ch. 56½, pars. 1402(a), 1402(b).) Prior to trial, defendants' motion to quash the search warrants and to suppress the evidence was granted. On appeal, the State contends that the trial court erred in granting defendants' motion.

On March 10, 1978, four search warrants were issued authorizing a search of Brumfield and the premises located at 2929 West Arthington, 1569 South Kedzie, 4501 South State and 1526 North Austin. Brumfield

owned the above premises while Gregory was a tenant at 2929 West Arthington.

On March 11, Officer Riley observed Brumfield exit the premises at 2929 West Arthington and depart in a Cadillac. After Brumfield had driven a few blocks, he was stopped by Riley and shown a copy of the search warrant. Although a search of Brumfield and his automobile failed to turn up any controlled substances, Riley continued to detain him.

Thereafter, Brumfield was taken back to 2929 West Arthington and the second floor apartment was searched pursuant to the previously issued warrant. This search resulted in the seizure of more than 30 grams of heroin and less than 30 grams of cocaine.

At trial defendants asserted that after the search of Brumfield failed to disclose any illegal contraband, he should have been released. They argued that his continued detention amounted to an illegal arrest and that everything that followed the arrest was invalid. The State argued that the seized evidence flowed from a valid search warrant and not Brumfield's arrest; that the search of the apartment was not in any way occasioned, precipitated or effected by the continued detention of Brumfield; and that, therefore, the evidence was not the "fruit of the poisonous tree."

In allowing defendants' motion, the court stated:

> "* * * [I]t appears to me that after an arrest is made of an individual on the street, then, of course, nothing being found on him and not seeing him in the commission of any offense, that he then is taken to various buildings which he may or may not own in attempting to find something in those buildings, and it sounds like it is a real fishing expedition or the State should produce the confidential informant who might produce whatever evidence he has, but I would grant the motion of the defendants."

This appeal followed.

## OPINION

The State contends that the granting of defendants' motion to quash the search warrants and to suppress the evidence was manifestly erroneous. It argues that seized evidence was discovered during the execution of a valid search warrant which was issued prior to Brumfield's arrest. Alternatively, the State argues that even if the seized evidence somehow flowed from Brumfield's arrest, its suppression was manifestly erroneous since its discovery was totally independent from any illegality associated with the arrest and would have been gained regardless of Brumfield's arrest. Defendants maintain that the affidavits supporting the search warrants failed to meet the constitutional requirements of *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, and *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584, and that

therefore the trial court properly granted their motion to suppress. Defendants also assert that the court's ruling was not based on any fruit of the poisonous tree theory.

In *Aguilar v. Texas*, the United States Supreme Court enunciated the criteria upon which search warrants issued on the basis of information supplied by an undisclosed informant are to be judged. That court held that the issuing judge must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, was credible or his information reliable. (*People v. Mitchell* (1970), 45 Ill. 2d 148, 258 N.E.2d 345; see also *Spinelli v. United States*.) The affidavit is presumed valid, and allegations of negligence or innocent mistake are an insufficient attack against it. (*People v. O'Dell* (1980), 84 Ill. App. 3d 359, 405 N.E.2d 809; see also *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674.) It is to be interpreted in a realistic manner, and not tested by elaborate technical requirements. (*People v. Thomas* (1975), 62 Ill. 2d 375, 342 N.E.2d 383.) Generally, any challenge to the issuance of a search warrant is limited to questions concerning the sufficiency of the affidavit and an accused is not allowed to go beyond the "four corners" of the affidavit to show the lack of probable cause. (*People v. O'Dell*; *People v. Jakuboski* (1976), 42 Ill. App. 3d 1067, 356 N.E.2d 646; see also *People v. Bak* (1970), 45 Ill. 2d 140, 258 N.E.2d 341.) In any event, a defendant is not entitled to the production of the informant for the purpose of attempting to disprove the allegations made under oath which the issuing judge found supportive of the warrant. (*People v. Jakuboski*; *People v. Berry* (1970), 46 Ill. 2d 175, 263 N.E.2d 487.) Finally, a suppression order will be reversed only if it is manifestly erroneous. *People v. Davis* (1980), 86 Ill. App. 3d 557, 407 N.E.2d 1109.

The search warrants in the instant case were obtained on the basis of the following:

"I, Thomas Riley a Chicago Policeman had a conversation on March 10, 1978 with a Confidential Informant (CI) whom I have known for approximately two years. During the time I have known this CI he has given me information relative to narcotics law violations on four separate occasions. The information supplied to me by this CI resulted in four narcotic raids in which narcotic was [*sic*] recovered each time (verified by the Crime Lab of the Chicago Police Department) and one arrest was made each time. Two of the persons arrested have their cases still pending in court, one was discharged and one person was convicted of narcotic law violations. This CI told me that on this date (March 10, 1978) he was

with one Willie Brumfield a M/N at the second floor apartment at 2929 W. Arthington Chicago, Illinois and while there he observed Willie Brumfield place tinfoil packets containing heroin which was brown in color into brown paper bags for delivery to locations owned and run by Willie Brumfield for further distribution of the heroin. The CI told me that he knew that it was in fact heroin because Brumfield gave the CI some of the heroin for helping Brumfield distribute the heroin. The CI stated that he snorted some of the heroin and that he knew it was in fact heroin because he has been using heroin for the past few years. The CI stated that when he left the second floor apartment at 2929 W. Arthington Chicago, Illinois that Brumfield had a still larger quantity of heroin which was contained in tinfoil packets in his possession and under his control when the CI left."

■■ A fair and realistic review of the above affidavit demonstrates that sufficient facts were alleged to satisfy *Aguilar's* two-prong test. The instant affidavit contains numerous facts which readily informed the issuing judge of the underlying circumstances from which Officer Riley concluded that the informant was credible and the information reliable. First, Riley swore that he had known the informant for approximately two years and, during that time, the informant had supplied him information concerning narcotics violations on four separate occasions. On each occasion, narcotics were recovered and an arrest was made. Two of the persons arrested have their cases still pending, one was discharged and the fourth was convicted. These facts are sufficient to support the issuing judge's finding that the informant was reliable. Compare *People v. Mitchell* (1970), 45 Ill. 2d 148, 258 N.E.2d 345; *People v. Thomas* (1975), 62 Ill. 2d 375, 342 N.E.2d 383.

■■ Likewise the instant affidavit sufficiently states the underlying circumstances from which the informant concluded that the narcotics were where he claimed them to be. First, the affidavit stated that the informant told Riley that on March 10, 1978, he had been with Brumfield at the second floor apartment located at 2929 West Arthington. There he observed Brumfield place tinfoil packets containing heroin into bags for further distribution. (Compare *People v. Mitchell.*) The affidavit also detailed the appearance of the substance, the informant's experience in the area of drug identification and how he arrived at his conclusion that the brown substance was heroin. These facts amply support a finding that narcotics were present at 2929 West Arthington.

While in limited circumstances a defendant may challenge the validity of an affidavit supporting a search, such challenges must be supported by more than a mere desire to cross-examine the affidavit or the confidential informant. To mandate an evidentiary hearing, a defendant

must allege deliberate falsehoods or reckless disregard for the truth. In addition, these allegations must be accompanied by an offer of proof which specifically points out the portion of the affidavit that is claimed to be false and a statement of supporting reasons. *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674.

■■ In the instant case, defendants merely asserted that Brumfield's continued detention, after a search failed to disclose any illegal contraband, amounted to an illegal arrest and that, therefore, everything that followed was invalid. They did not allege that the affidavits contained deliberate falsehoods or a reckless disregard for the truth. Consequently, an evidentiary hearing into the validity of the supporting affidavits was not appropriate. In addition, defendants made no offer of proof specifically pointing to portions of the affidavit claimed to be false. Defendants' bare assertion that Officer Riley's actions "clearly demonstrate that [he] placed no reliance upon the confidential informant and that [he was] on a true fishing expedition" is plainly insufficient. First, this assertion does not in any way suggest that the affidavit contained any falsehoods. Secondly, a plausible explanation for Riley's actions is that he relied extensively on information supplied by the informant and that he did not wish to relinquish custody of Brumfield which would only necessitate his relocation and arrest after the search of the above named premises revealed narcotics. Accordingly, we find that the affidavits in the instant case met the constitutional requirements of *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, and *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584.

■■ Furthermore, we agree with defendants' assertion that the present suppression order could not properly be based upon the "fruit of the poisonous tree" theory. Although the State concedes that Brumfield's search failed to yield any incriminating evidence and that he should have been released, the mere fact that an arrest is improper presents no constitutional issue unless defendants were prejudiced in some way. (*United States v. Radford* (7th Cir. 1971), 452 F.2d 332.) Defendants have failed to assert how or in what they have been prejudiced. First, Brumfield's search did not reveal any incriminating evidence. Nor was any evidence obtained through his continued detention. It follows that where no evidence is obtained from an illegal arrest, there is nothing to exclude. (*United States v. Radford.*) The evidence sought to be introduced in the present case was obtained through the search of the premises located at 2929 West Arthington. This search was conducted and authorized pursuant to a valid search warrant which had been issued prior to Brumfield's detention. Consequently, Brumfield's detention is totally unrelated to the issuance of the instant search warrants. To exclude the evidence in the present case would necessitate a finding that Brumfield's improper detention reached

back and tainted the validity of the remaining search warrants. However, the purpose of the exclusionary rule is to enjoin the State from benefitting from evidence unlawfully obtained; it does not reach backward and taint information that was in official hands prior to any illegality. (*United States v. Crews* (1980), 445 U.S. 463, 63 L. Ed. 2d 537, 100 S. Ct. 1244; *People v. Sampson* (1980), 86 Ill. App. 3d 687, 408 N.E.2d 3.) Accordingly, such a finding would be unwarranted.

■■ Finally, evidence is not the fruit of the poisonous tree if it (1) is discovered by an independent source; (2) is sufficiently distant in causal connection from the illegal search and seizure so that the connection has been so attenuated so as to dissipate the taint, or (3) the evidence inevitably would have been gained without the unlawful search or arrest. (*People v. Horton* (1977), 49 Ill. App. 3d 531, 364 N.E.2d 551; *United States ex rel. Owens v. Twomey* (7th Cir. 1974), 508 F.2d 858; see also *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407.) In the instant case, it was the search of the premises located at 2929 West Arthington that revealed the illegal contraband, not Brumfield's detention. This search was conducted pursuant to a valid search warrant. Brumfield's continued detention was in no way the catalyst that revealed the contraband. Consequently, the discovery of the seized substance was independent of Brumfield's improper detention. Additionally, absent Brumfield's detention, proper police procedures relative to the issuance of a search warrant would have entailed a search of the premises. Such a search would have inevitably disclosed the evidence now sought to be suppressed. Accordingly, we find that the order quashing the search warrants and suppressing the evidence to be manifestly erroneous.

For the reasons stated, the judgment of the trial court is reversed and the cause remanded for further proceedings.

Reversed and remanded.

SULLIVAN, P. J., and WILSON, J., concur.