J-S29010-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHANNON TERRELL BENNETT | : | |
| | : | |
| Appellant | : | No. 73 WDA 2025 |

Appeal from the PCRA Order Entered December 30, 2024
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0002143-2020

BEFORE: NICHOLS, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY NICHOLS, J.: **FILED: November 25, 2025**

Appellant Shannon Terrell Bennett appeals from the order denying his first Post Conviction Relief Act[1] (PCRA) petition. On appeal, Appellant argues that his trial counsel was ineffective. After review, although we affirm the order denying Appellant's PCRA petition, we are constrained to vacate Appellant's judgment of sentence in part.[2]

The PCRA court summarized the relevant facts of this matter as follows:

On September 10th, 2020, while responding to a call . . ., Officer [Tyler] McClellan and Officer [Justin] Hollern noticed a man (later determined to be Dennis Pletcher) arrive at the Roadway Inn, enter room 111, and leave after a short time. (Trial Tr. 34-38)[.]

---

[1] 42 Pa.C.S. §§ 9541-9546.

[2] **See**, **e.g.**, **Commonwealth v. Flemister**, 946 MDA 2021, 2022 WL 3652713, at *1 (Pa. Super. filed Aug. 25, 2022) (unpublished mem.) (affirming PCRA court order and vacating judgment of sentence in part). **See also** Pa.R.A.P. 126(b) (stating this Court may rely on unpublished decisions of this Court filed after May 1, 2019, for their persuasive value).

The officers then conducted a traffic stop on Dennis Fletcher and found him to be in possession of heroin, methamphetamines, oxy[codone], and another pill. Mr. Pletcher told the officers that he had traded Shay (Shannon Bennett) an 8 ball of methamphetamines for heroin. (Trial Tr. 105-106)[.] The police had information from a confidential informant [(the CI)] that [Appellant] had been dealing drugs. (Trial Tr. 38)[.] After receiving the information from Pletcher, the police contacted [the CI] to confirm the room number. Officer McClellan and Officer Hollern then proceeded to the hotel room and arrested Mr. Bennett and [the CI]. Incident to the arrest, the officers did a protective sweep of the hotel room and then secured it until a [search] warrant was obtained. (Trial Tr. 108-109)[.] Once a warrant was issued, they searched the hotel room and found a scale, multiple bags of clean packing, and a cranberry supplement jar containing 48 individual stamps of heroin. (Trial Tr. 109)[.]

PCRA Ct. Op., 12/27/24, at 2.

Following a jury trial, Appellant was convicted of possession with intent to deliver a mixture of heroin and fentanyl (PWID), simple possession of a mixture of heroin and fentanyl, possession of drug paraphernalia, conspiracy to commit PWID, and criminal use of a communication facility.[3] **See** Amended Information, 12/2/21; Verdict Sheet, 12/7/21. On February 18, 2022, the trial court sentenced Appellant to an aggregate term of fourteen to twenty-eight years of incarceration.[4] Appellant filed a direct appeal to this Court, and

___

[3] 35 P.S. §§ 780-113(a)(30), (a)(16), (a)(32); 18 Pa.C.S. §§ 903(a), and 7512(a), respectively.

[4] The trial court sentenced Appellant to a term of 84 to 168 months of incarceration for PWID; 84 to 168 months of incarceration for conspiracy; 24 to 48 months of incarceration for criminal use of a communication facility, no further penalty for simple possession of a controlled substance, and no further penalty for possession of drug paraphernalia. **See** N.T., Sentencing, 2/18/22, at 22-23. The trial court ordered the sentences for PWID and conspiracy to
*(Footnote Continued Next Page)*

- 2 -

Appellant's direct appeal counsel filed a petition to withdraw as counsel pursuant to **Anders v. California**, 386 U.S. 738 (1967) and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009). This Court affirmed Appellant's judgment of sentence and granted direct appeal counsel's petition to withdraw. **See Commonwealth v. Bennett**, 469 WDA 2022, 2022 WL 16911842, at \*1 (Pa. Super. filed Nov. 14, 2022) (unpublished mem.).

Appellant filed a timely *pro se* PCRA petition, and the PCRA court appointed counsel (PCRA counsel), who filed an amended PCRA petition on Appellant's behalf. The PCRA court held a hearing on March 22, 2024. In an

---

be served consecutively and ordered that the sentence for criminal use of a communication facility to be served concurrently with the sentences for PWID and conspiracy for an aggregate sentence of fourteen to twenty-eight years of incarceration. **See id.** at 24-25. We note that counsel for Commonwealth conceded that simple possession would merge with PWID. **See id.** at 10. However, the trial court did not explicitly state that simple possession merged with PWID, and instead stated "no further sentence is imposed" on the conviction for simple possession of a controlled substance. **Id.** at 23. Merger implicates the legality of the sentence, and the legality of a sentence is an issue this Court can raise *sua sponte*. **Commonwealth v. Westlake**, 295 A.3d 1281, 1288 (Pa. Super. 2023). Further, our standard of review is *de novo* and our scope of review is plenary. **Id.** A sentence of "no further penalty" constitutes a sentence, and it must be vacated where the sentence should have merged. **Id.** at 1289 (vacating sentence of no further penalty where convictions should have merged). Accordingly, we are constrained to vacate Appellant's judgment of sentence for simple possession of a controlled substance because it merges with PWID for purposes of sentencing. **See id.** However, we conclude that we need not remand for re-sentencing in this case because our decision does not upset the trial court's sentencing scheme. **See Commonwealth v. Thur**, 906 A.2d 552, 569-70 (Pa. Super. 2006) (explaining that an appellate court need not remand for resentencing when it can vacate an illegal sentence without upsetting trial court's overall sentencing scheme).

order and opinion filed on December 30, 2024, the PCRA court denied Appellant's PCRA petition. Appellant filed a timely notice of appeal.[5]

On appeal, Appellant presents the following issues, which we have reordered as follows:

1. Did [Appellant] receive ineffective assistance when his trial counsel failed to challenge the [reliability of the] later search warrant?

2. Did [Appellant] receive ineffective assistance when his trial counsel failed to challenge the warrantless entry into [Appellant's] hotel room to arrest him?

3. Did [Appellant] receive ineffective assistance when his trial counsel understated the accurate sentencing risk for conviction at trial by nearly three times?

Appellant's Brief at 4 (some formatting altered).[6]

In reviewing an order denying a PCRA petition, our standard of review is well settled:

Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the record in the light most favorable to the prevailing party in the PCRA court. We are bound by any

_____

[5] The record does not reflect that the PCRA court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and in a letter filed on January 23, 2025, the PCRA court notified this Court that it would rely on its December 30, 2024 opinion and order to support its denial of Appellant's PCRA petition.

[6] The Commonwealth did not file an appellate brief in this appeal and informed this Court that it would rely on the Commonwealth's Memorandum of Law in Opposition to PCRA Petition filed in the PCRA court on July 1, 2024, and the PCRA court's opinion filed on December 27, 2024. **See** Commonwealth's Letter and Appendix, 7/25/25.

credibility determinations made by the PCRA court where they are supported by the record. However, we review the PCRA court's legal conclusions *de novo*.

***Commonwealth v. Staton***, 184 A.3d 949, 954 (Pa. 2018) (citation and quotation marks omitted). A PCRA petitioner "has the burden to persuade this Court that the PCRA court erred and that such error requires relief." ***Commonwealth v. Wholaver***, 177 A.3d 136, 144-45 (Pa. 2018) (citations omitted).

Regarding claims of ineffective assistance of counsel, we note that

[c]ounsel is presumed to be effective and it is a petitioner's burden to overcome this presumption by a preponderance of the evidence. To succeed on a claim of ineffective assistance of counsel, a petitioner must establish three criteria: (1) that the underlying claim is of arguable merit; (2) that counsel had no reasonable basis for his or her action or inaction; and (3) that petitioner was prejudiced as a result of the complained-of action or inaction. The failure to satisfy any one of these criteria is fatal to the claim. To establish prejudice in the context of this standard, a petitioner must establish that there is a reasonable probability that the result of the proceeding would have been different but for the complained-of conduct.

***Commonwealth v. Thomas***, 323 A.3d 611, 620-21 (Pa. 2024) (citations omitted). Finally, it is well settled that counsel is not ineffective for failing to raise a meritless claim. ***See Commonwealth v. Spotz***, 896 A.2d 1191, 1210 (Pa. 2006).

## Search Warrant

Appellant argues that his trial counsel was ineffective for failing to challenge the reliability of the application for the search warrant. ***See*** Appellant's Brief at 22. Appellant contends that the affidavit of probable cause

supporting the application for the search warrant lacked "the requisite indicia of reliability for Mr. Pletcher—who provided all the substantive allegations." *Id.* Further, Appellant argues that the affidavit obscures certain facts. *See id.* at 25.

Our Supreme Court has explained:

In determining whether a search warrant is supported by probable cause, appellate review is confined to the four corners of the affidavit. Probable cause, in turn, is a practical, non-technical concept which requires consideration of the totality of the circumstances. The district judge that is requested to issue a warrant makes a practical, common-sense determination as to whether, given all of the facts and circumstances provided in the affidavit, including the veracity and basis of knowledge of the persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a certain locale. The duty of the reviewing court is to simply ensure that the district judge had a substantial basis for concluding that probable cause existed.

*Commonwealth v. Galvin*, 985 A.2d 783, 796 (Pa. 2009) (citations omitted and formatting altered). "However, search warrants should be read in a common sense fashion and should not be invalidated by hypertechnical interpretations. This may mean, for instance, that when an exact description of a particular item is not possible, a generic description will suffice." *Commonwealth v. Kane*, 210 A.3d 324, 332 (Pa. Super. 2019) (citations omitted).

In the instant case, the affidavit stated:

This Affiant, Patrolman Tyler McClellan, is currently employed by the Logan Township Police Department as a police officer. I have been a police officer since August of 2017. During my time as a police officer I have conducted many narcotics investigations

resulting in arrests and successful convictions of those responsible. I have received training in narcotics investigations, interdiction, and narcotic identification. I have experience working with the Pennsylvania Attorney General's Blair County Drug Task Force. I have been involved with prior drug investigations to include securing and executing search warrants, seizing drugs and drug paraphernalia, which have resulted in charges being filed and convictions being obtained.

On September 10, 2020, myself and Officer [Justin] Hollern were dispatched to an alarm call at ComPros [Inc]. As we were preparing to clear the scene, a black in color motorcycle pulled up pas[t] us in the ComPros parking lot, turned around and pulled in front of room #111 of the Roadway Inn Motel. I was familiar with the occupants of the room, [the CI] and [Appellant], from past incidents involving drugs. I also had information from a confidential source that [Appellant] was selling narcotics. We observed the male on the motorcycle, later identified as Dennis Pletcher, exit the bike and knock on the door of Room #111. I identified [Appellant] as the person that opened the door to let Pletcher inside. I recognized both vehicles outside the room as [Appellant's] and [the CI's] registered vehicles. I ran the registration on the sedan confirming that it belonged to [Appellant]. Myself and [Officer] Hollern parked and did surveillance along Orchard Ave and Sterling St. [Officer] Hollern observed [Pletcher] turn left out of Sterling St. onto Orchard Ave. without using his left turn signal. I got behind Pletcher and activated my emergency lights to conduct a traffic stop in the parking lot of Macy's along Goods Ln. I approached Pletcher and got his information. I asked where he was coming from and he stated his buddy "Shea's" motel room. I was aware that "Shea" is the nickname that [Appellant] goes by. Pletcher stated that he was there to look at puppies [Appellant] had for sale and that he found him through Facebook. Pletcher was visibly nervous. He had sweat beading and running off his forehead. Officer Hollern asked if he would be willing to pull up the Facebook ad[] he said he saw just an hour or two ago about the dogs for sale. Pletcher could not find the Facebook post and was beginning to visibly sweat more. [Officer] Hollern asked Pletcher if he would mind emptying his pockets, which Pletcher consented and removed miscellaneous items from his pockets. After further conversation, [Officer] Hollern asked Pletcher for consent to check his pockets to ensure nothing else was on his person. Consent was granted in which a wad of cash was located in Pletcher's left pants pockets.

Also located was a packet of cigarettes in Pletcher's right vest pocket. Inside the pack of cigarettes [were] wax packages containing suspected heroin. Pletcher was taken into custody and I read him his **Miranda** Warnings.[7] I searched Pletcher incident to arrest and located in his vest a glasses case with a clear glass vial containing approximately a gram of Methamphetamine. Also in the glasses case was a metal container with 13 Oxycodone pills and 4 Phentermine Hydrochloride pills. It was later confirmed that in the cigarette pack [were] 18 packets of suspected heroin stamped "feeling good." Pletcher stated that he met [Appellant] through a friend and has known him for a couple months. He then stated that he contacted him via phone call and arranged a deal to trade an "8 ball" of Methamphetamine for "2 bundles" of heroin. Pletcher said that when he went into the room they went back to the bathroom and that's where [Appellant] got the heroin out of sock that was in the bathtub and traded it for the "8 ball" of Meth. Pletcher also stated that in the room with [Appellant] was it white heavier set girl that was [Appellant's] girlfriend.

Myself, Officer Hollern, Officer Rosenberry, and Officer Gripp drove over to the parking lot of the Roadway Inn and knocked on the door of Room 111. [Appellant] opened the door and he was advised that he was under arrest and to put his hands behind his back. [The CI] was sitting on the second bed and was told that she was being detained and placed in handcuffs. A sweep of the back room was done to assure [sic] no one else was inside. The room was secured by [Officers] Rosenberry and Gripp while a search warrant was typed.

With the statement made by Pletcher and the narcotics found on him after coming from Room 111 and the previous knowledge of narcotics sales from [Appellant], I am requesting a search warrant for Room 111 at the Roadway Inn Motel.

All information is of an official Logan Township Police investigation and is true and correct to the best of my knowledge.

Search Warrant Affidavit of Prob. Cause., 9/10/20 (some formatting altered).

In its Rule 1925(a) opinion, the PCRA court explaned:

---

[7] **Miranda v. Arizona**, 384 U.S. 436 (1966).

- 8 -

> Given the totality of the circumstances as stated in the probable cause affidavit, there was a fair probability that evidence of drug-related crimes would be found in the hotel room. The affidavit relied on more than Mr. Pletcher's statements alone and did not include any information obtained after entering [Appellant's] hotel room to make the arrest. The search warrant was supported by probable cause and could not have been suppressed. Therefore, this claim for relief also fails.

PCRA Ct. Op., 12/27/24, at 5 (some formatting altered).

After review, we agree with the PCRA court's conclusion. The four corners of the affidavit support the conclusion that Appellant was dealing in controlled substances, and that evidence of these crimes would be found in Appellant's hotel room. *See* Search Warrant Affidavit of Prob. Cause., 9/10/20. Officer McClellan stated that he knew the CI and Appellant from "past incidents involving drugs." *Id.* The officers determined that the car parked outside the hotel was registered to Appellant, and Mr. Pletcher informed the officers that he went to Appellant's hotel room and had exchanged methamphetamine for heroin. *See id.* Further, Appellant argues that Officer McClellan obscured facts by referring to the CI as both a "confidential informant" and also referring to the CI by the CI's full name in the affidavit. *See* Appellant's Brief at 26. However, we find it speculative to conclude that Officer McClellan's single reference to the CI by name and also as a "confidential informant" in the affidavit was meant to intentionally obscure facts. As noted, the affidavit stated the officer's prior knowledge of Appellant's involvement with drugs and Mr. Pletcher's statement that he went

to Appellant's hotel room and exchanged methamphetamine for heroin. **See** Search Warrant Affidavit of Prob. Cause., 9/10/20.

In sum, we conclude that Appellant has failed to establish that his claim has arguable merit as the affidavit of probable cause supported the conclusion that Appellant was distributing controlled substances, and there was a fair probability that contraband or evidence of a crime would be found in Appellant's hotel room. **See Thomas**, 323 A.3d at 620-21; **see also Kane**, 210 A.3d at 332; **Galvin**, 985 A.2d at 796; **Spotz**, 896 A.2d at 1210. Further, we discern no prejudice as there is not a reasonable probability that the result of the proceedings would have been different had counsel filed a suppression motion. **See Thomas**, 323 A.3d at 620-21. Because Appellant cannot establish the three prongs of the test for ineffective assistance of counsel, his claim fails. **See id.**

### Warrantless Arrest

Appellant also argues that trial counsel was ineffective for failing to challenge his warrantless arrest. Appellant's Brief at 13. Appellant argues that the police officers knocked on the door of his hotel room, and when he opened the door, the officers arrested him and then performed a protective sweep of the room. **Id.** at 13-15. Appellant notes that the Commonwealth argued only probable cause to arrest Appellant, but the police did not have an arrest warrant and did not establish an exception to the warrant requirement. **Id.** at 16-19. Appellant asserts that "[l]aw enforcement officers may not circumvent the arrest warrant requirement by simply summoning a suspect

to the doorway of the suspect's home in order to effect an arrest in a public place[.]" ***Id.*** at 15-16 (quoting ***United States v. Herrold***, 772 F. Supp. 1483, 1490 (M.D. Pa. 1991) (citing ***United States v. McCraw***, 920 F.2d 224 (4th Cir. 1990); ***United States v. Morgan***, 743 F.2d 1158 (6th Cir. 1984))) (some formatting altered).  For these reasons, Appellant argues that his trial counsel was ineffective for failing to challenge the legality of his arrest.  ***Id.*** at 19-21.

> This Court has explained:
>
> The law is clear that citizens are protected by both federal and state constitutional provisions from unreasonable searches and seizures.  U.S. Const. Amend. IV; Pa. Const. Art. I, § 8. ***Commonwealth v. Dean***, 940 A.2d 514, 520 (Pa. Super. 2008). A hotel room can clearly be the object of Fourth Amendment protection as much as a home or an office.  ***Id.*** at 519 (cleaned up).  Moreover, a warrantless search or seizure is presumptively unreasonable under the Fourth Amendment and Article I, § 8, subject to a few specifically established, well-delineated exceptions.

***Commonwealth v. Martin***, 253 A.3d 1225, 1228 (Pa. Super. 2021) (some citations omitted).  "Exceptions to the warrant requirement include the consent exception, the plain view exception, the inventory search exception, the exigent circumstances exception, . . . the stop and frisk exception, and the search incident to arrest exception." ***Commonwealth v. Simonson***, 148 A.3d 792, 797 (Pa. Super. 2016) (some formatting altered and citation omitted).

As noted above, when the officers knocked on Appellant's hotel room door and Appellant answered the door, the officers informed Appellant that he

was under arrest. *See* N.T., Trial, 12/6-7/21, at 43, 108, 182. Appellant cites to cases from federal courts in support of his underlying claim that his arrest was unlawful. *See* Appellant's Brief at 15-16. However, this Court is not bound by federal court decisions, and "[a]bsent a United States Supreme Court pronouncement, the decisions of federal courts are not binding on Pennsylvania state courts, even when a federal question is involved." *Drelles v. Manufacturers Life Ins. Co.*, 881 A.2d 822, 841 (Pa. Super. 2005).

Here, Appellant has failed to establish that the underlying claim has arguable merit, as he has not cited any binding authority from Pennsylvania Courts or the United States Supreme Court in support of his argument. *See Thomas*, 323 A.3d at 620-21. Further, we cannot conclude that there is a reasonable probability that the result of the proceedings would have been different if Appellant's trial counsel challenged the legality of Appellant's arrest. Therefore, Appellant has failed to establish prejudice. *See id.* Accordingly, this claim fails.[8] *See id.*

_____

[8] In any event, even if Appellant's arrest was unlawful, we note that "[t]he mere fact that there has been an unlawful arrest does not cause all evidence thereafter obtained to be inadmissible." *Commonwealth v. Gibbs*, 563 A.2d 1244, 1246 (Pa. Super. 1989) (citing *Brown v. Illinois*, 422 U.S. 590 (1975)). "The fruit of the poisonous tree doctrine excludes evidence obtained from or as a consequence of lawless official acts, not evidence obtained from an independent source." *Id.* (citing *Costello v. United States*, 365 U.S. 265, 280 (1961)) (some formatting altered). As discussed above, the search warrant was supported by facts independent from Appellant's arrest. *See* PCRA Ct. Op., 12/27/24, at 5. Following the execution of the search warrant, the police located contraband in Appellant's hotel room, which included a scale, clean packaging, bags, and a jar containing heroin, that supported
*(Footnote Continued Next Page)*

## Sentencing Guidelines

In his final issue, Appellant argues that trial counsel was ineffective for failing to advise Appellant of the correct sentencing guidelines for each count on which he could be sentenced. **See** Appellant's Brief at 31. Appellant contends that "while it may be true that [he] desired a trial, this was also in the context of his belief that he faced a 6-year sentence[,]" and therefore, a reasonably probability that Appellant may have accepted a plea offer had he known the actual sentencing guidelines. **See id.** at 34-37.

Appellant was charged with possession of fentanyl, and therefore, he was subject to the fentanyl sentencing enhancements. **See** 204 Pa. Code § 303.15.[9] Appellant alleges that he was offered a plea deal with a minimum

_____

Appellant's arrest. **See id.** at 2 (citing N.T., Trial, 12/6-7/21, at 109). Accordingly, even if Appellant's arrest was determined to be unlawful, because there was an independent source of information for the search warrant that supported Appellant's arrest, we cannot conclude that there is a reasonable probability that if counsel challenged the legality of Appellant's arrest that the result of the proceedings would have been different. **See Thomas**, 323 A.3d at 620-21; **see also Gibbs**, 563 A.2d at 1246.

[9] With Appellant's prior record score of repeat felony offender (RFEL) and with the fentanyl enhancement, the offense gravity score (OGS) was 10 for both PWID and conspiracy. **See** 204 Pa. Code § 303.15(a)(14); N.T., Sentencing, 2/18/22, at 6. This resulted in standard range minimum sentences of between seventy-two to eighty-four months for PWID and conspiracy. **See** 204 Pa. Code § 303.16(a); N.T., Sentencing, 2/18/22, at 6. Further, the standard range minimum sentences for criminal use of a communication facility was twenty-four to thirty-six months, and three to six months for possession of drug paraphernalia. **See** 204 Pa. Code § 303.16(a); N.T., Sentencing, 2/18/22, at 6. As stated, the trial court imposed an aggregate sentence of fourteen to twenty-eight years of incarceration. **See** N.T., Sentencing, 2/18/22, at 22-24.

sentence of one year of incarceration. *See* N.T., PCRA Hr'g, 3/22/24, at 44. Appellant argues that trial counsel understated the potential sentence Appellant could receive by informing Appellant that he faced a maximum sentence of six years if he went to trial and was convicted. *See id.* at 44, 46, 55; *see also* Appellant's Brief at 31.

We note that Appellant has failed to direct this Court's attention to anything in the record supporting Appellant's claim that he was offered a plea agreement with a minimum of one year of incarceration. Further, at the PCRA hearing, Appellant's trial counsel disputed Appellant's allegations that he failed to inform Appellant of the applicable sentencing guidelines. Trial counsel testified that although he originally informed Appellant about the sentencing guidelines applicable to heroin only, once he learned about the presence of a mixture of fentanyl in the seized contraband, trial counsel discussed with Appellant the enhanced sentences related to fentanyl at a pretrial meeting in trial counsel's office. *See* N.T., PCRA Hr'g, 3/22/24, at 15-16, 64-65. Moreover, trial counsel specifically disputed advising Appellant his potential sentencing exposure was only six years. *See id.* at 65. Further, trial counsel explained that Appellant was adamant that he wanted to go to trial, and it was Appellant's choice to go to trial. *See id.* at 33.

The PCRA court's order and opinion support the conclusion that the PCRA court credited trial counsel's testimony and did not credit Appellant's testimony. In its opinion, the PCRA court addressed this issue as follows:

[Appellant] also claimed ineffective assistance of counsel for failing to discuss sentencing guidelines. Trial counsel testified that he had discussed sentencing guidelines with [Appellant] and that [Appellant] made it clear he did not want to plead guilty. (PCRA Tr. 33)[.] Therefore, [Appellant] cannot show how he was prejudiced by any lack of knowledge of sentencing guidelines.

PCRA Ct. Op., 12/27/24, at 7 (some formatting altered).

As noted, we are bound by the PCRA court's credibility determinations that are supported by the record. *See Staton*, 184 A.3d at 954. Because we conclude that the PCRA court credited trial counsel's testimony that he informed Appellant of the accurate sentencing guidelines and did not credit Appellant's testimony, Appellant has failed to establish prejudice, *i.e.*, establish that had he known about the enhanced sentencing guidelines applicable to fentanyl, he would have taken a plea deal that was allegedly offered prior to trial. *See Thomas*, 323 A.3d at 621. Moreover, Appellant cannot establish that his claim has arguable merit, as he was informed of the applicable sentencing guidelines and chose to proceed to trial. *See id.* at 620; *see also* N.T., PCRA Hr'g, 3/22/24, at 15-16, 33, 64-65. Accordingly, Appellant's final claim on appeal fails. *See Thomas*, 323 A.3d at 621 (explaining that the failure to satisfy any one prong of the test for ineffective assistance of counsel is fatal to the claim); *Spotz*, 896 A.2d at 1210 (providing that counsel cannot be ineffective for failing to raise a meritless claim).

For the reasons stated above, we affirm the PCRA court's order. However, we are constrained to vacate Appellant's judgment of sentence for simple possession of a controlled substance because it merges with PWID for

purposes of sentencing. Appellant's sentences for PWID, conspiracy, possession of drug paraphernalia, and criminal use of a communication facility remain undisturbed.

Order affirmed. Judgment of sentence vacated in part. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/25/2025